UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXIS ROSE,

                                    *Plaintiff*,

    v.                                                    Case No. 24-CV-1887 (KMK)

CHRISTOPHER SAPIENZA, *et al.*                ORDER & OPINION

                                    *Defendants*.

Appearances:

Alexis Rose
Stormville, NY
*Pro se Plaintiff*

Darius P. Chafizadeh, Esq.
Jessica M. Kalpakis, Esq.
Harris Beach Murtha Cullina PLLC
White Plains, NY

Michael J. Ashraf, Esq.
City of Yonkers
Yonkers, NY
*Counsel for Defendants Christopher Sapienza and Police Officer Sherding*

Irma W. Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants Miriam Rocah and John O'Rourke*

KENNETH M. KARAS, United States District Judge:

Alexis Rose ("Plaintiff") brings this Action pro se against Miriam E. Rocah, Westchester County District Attorney, John O'Rourke, Westchester County Assistant District Attorney, (together, "County Defendants"), Don Glo Towing, a Police Officer Sherding, and Christopher Sapienza, (collectively "Defendants"), seeking injunctive relief, a temporary restraining order, and monetary damages for asserted violations of his Fourth and Fourteenth Amendment Rights

under the United States Constitution pursuant to 42 U.S.C. § 1983.  (*See* Second Am. Compl. ("SAC") 1, 6–7 (Dkt. No. 10); *see also id.* ¶ 17.)[1]  County Defendants moved to dismiss the SAC, contending that the SAC does not state a claim against them because Plaintiff failed to allege their personal involvement in the asserted constitutional violations.  (*See generally* Mot. to Dismiss ("Mot." or the "Motion") (Dkt. No. 32); Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem") (Dkt. No. 35).)  For the reasons set forth below, the Motion to Dismiss is granted.

## I.  Background

A.  <u>Factual Background</u>

The following facts are drawn from Plaintiff's Second Amended Complaint and are taken as true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).  The Court also considers Exhibit A attached to Defendants' Motion to Dismiss, which is the judgment of conviction of Plaintiff.  (Decl. of Irma Cosgriff in Supp. of Mot. ("Cosgriff Decl."), Ex. A (Dkt. No. 33-1).)  The Court may take notice of such a public record.  *Price v. Peress*, No. 18-CV-4393, 2022 WL 4638148, at *11 (E.D.N.Y. Sept. 30, 2022) ("Though generally a court may not consult evidence outside the pleadings, it may take judicial notice of matters of public record, including the disposition of a state criminal court proceeding.").  The Court also considers Exhibits B and C, which are two state court decisions resolving motions filed on Plaintiff's behalf in his state criminal case.  (Cosgriff Decl., Ex. B (Dkt. No. 33-2);

---

[1] In citations to record materials, unless otherwise noted the Court refers page numbers as designated by the Court's Electronic Case Filing System, shown on the upper-right hand corner of each document.

Cosgriff Decl., Ex. C (Dkt. No. 33-3).)  While these decisions are not incorporated in the SAC and although they may not be considered for the truth of the matters asserted in these judicial opinions, the Court may take judicial notice of them as public records.  *See Rowe v. Aetna Health and Life Ins. Co.*, No. 22-CV-4870, 2026 WL 388609, at *4 n.7 (E.D.N.Y. Jan. 16, 2026) (report and recommendation) (considering state court decisions while deciding Rule 12(b)(6) motion because they are "indisputably public records of which the court is entitled to take judicial notice"); *Stukes v. City of New York,* No. 13-CV-6166, 2015 WL 1246542, at *7 n.9 (E.D.N.Y. Mar. 17, 2015) (relying on state court decisions denying motion to suppress, even though the plaintiff did not rely on them, because they are "public records of which the court is entitled to take judicial notice"); *Jacobs v. Law Offs. of Leonard N. Flamm,* No. 04-CV-7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations [made in the complaint] have been decided otherwise in previous litigation, . . . a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts.").  The Court also considers Exhibit D, which is a letter that is incorporated by reference in Plaintiff's SAC, (SAC ¶ 13 ("It was not until February 22[nd], 2024 [that] [P]laintiff's spouse receive[d] any communications concerning the vehicle from [D]efendant Rocah's office."); Cosgriff Decl., Ex. D (Dkt. No. 33-4) (letter from Defendant Rocah's Office to Plaintiff dated Feb. 27, 2024)), *see Sanchez v. Velez*, No. 08-CV-1519, 2009 WL 2252319, at *1 (S.D.N.Y. July 24, 2009) ("We also consider . . . documents . . . [the plaintiff] filed with the New York State Department of Correctional Services . . . submitted to the Court in support of the instant motion.

3

Because plaintiff's grievances are referenced in the complaint, the grievance documents are incorporated by reference and properly considered on a motion to dismiss.").[2]

Plaintiff is the owner of a 2013 White BMW 528 I X-Drive automobile (the "Vehicle"). (SAC ¶ 7.) On or about March 5, 2021, the Vehicle was parked somewhere along Seaton Avenue or Kingsbridge Road in the City of Mount Vernon. (*Id.*) Plaintiff entered the Vehicle, intending to drive. (*Id.*) Before he could do so, the Vehicle was "blocked in" by several City of Yonkers Police Department vehicles. (*Id.*) Plaintiff was taken from the Vehicle, placed in one of the police cars, and taken to the City of Yonkers Police Station. (*Id.*) While the Vehicle was still parked in Mount Vernon, it was searched and, Plaintiff alleges, seized without a warrant. (*Id.*)[3] At the time it was seized, the Vehicle contained various items and property belonging to Plaintiff and his wife (the "Property"), including "his spouse's engagement ring, numerous other pieces of jewelry, . . . [a]utomotive [m]echanic tools, EZ-Pass, USB drives, [p]ortable

---

[2] Despite the discrepancy in dates, because the letter is otherwise consistent with claims, the Court determines that the February 22, 2024 date in the Complaint may have been a typographical error.

[3] While Plaintiff claims that the Vehicle was searched without a warrant, the Court notes that a state court found otherwise. (*See* Cosgriff Decl., Ex. B, at 5 ("As to any evidence secured pursuant to the search warrants dated March 6 and 8, 2021 for the search of [D]efendant's vehicle, . . . the motion to suppress is denied as [D]efendant's motion fails to controvert the search warrants. . . . Upon review of the four corners of the search warrant affidavits, the warrants were adequately supported by probable cause, and sufficiently particular as to the place to be searched and things to be seized."). This ruling, which was issued after Plaintiff, with the assistance of counsel, filed a motion to suppress the fruits of the search of his Vehicle, arguably has collateral estoppel effect on his claims here challenging the search and seizure of the Vehicle. *See Forte v. City of New York,* No. 16-CV-560, 2023 WL 6259652, at *5 (S.D.N.Y. Sept. 26, 2023) ("A state court's determination that an arrest was supported by probable cause is generally entitled to preclusive effect."); *Hayes v. County of Sullivan,* 853 F. Supp. 2d 400, 426-27 (S.D.N.Y. 2012) ("Settled authority establishes that where, as here, a state court has determined that . . . the warrantless [search or] seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action." (internal quotation omitted)).

[c]omputer [h]ard drives, [l]aptop [c]omputers, . . . several duffel bags, [t]wo (2) knapsack bags, [t]wo (2) fanny-packs, [t]ool boxes with tools, . . . several cell phones, [t]wo (2) Apple Air[P]ods, [t]wo (2) Apple Watches, [a] business portfolio with business cards, . . . personal clothing[,] and $7,000 US dollars." (*Id.* ¶ 16.)  To be clear, and as is directly relevant to County Defendants' Motion to Dismiss, Plaintiff makes no allegations that O'Rourke or Rocah were involved in the seizure and/or search of the Vehicle. (*See generally* SAC.)

Plaintiff was told by his then-counsel that the Westchester County District Attorney's Office was investigating Plaintiff. (*Id.* ¶ 8.)  That investigation ultimately led to Plaintiff being convicted of one count of murder in the second degree, two counts of criminal possession of a weapon in the second degree, and one count of criminal contempt in the second degree. (*See* Cosgriff Decl., Ex. A, at 2 (criminal judgment)).  In a judgment dated August 18, 2023, Plaintiff was sentenced to 25 years to life for the murder charge, to 15 years for each of the weapons charges, and to one year and four months to four years for the contempt charge. (*Id.*)  Defendant O'Rourke was the Assistant District Attorney who prosecuted Plaintiff. (SAC ¶ 5.)  As part of the investigation, Plaintiff's vehicle was searched, "fingerprinted," and subjected to forensics testing for "gun powder residue." (*Id.* ¶ 8.)  The forensics testing came back negative for "gunpowder." (*Id.*)  Plaintiff's then-counsel sent a letter to the District Attorney's Office requesting that the Vehicle be released, but this request was "ignored." (*Id.*)  Plaintiff also claims that he and his spouse "communicated via writ[ing] . . . telephone . . . and in person [conversation] concerning the release of the [V]ehicle" and the items contained therein, but Plaintiff does not specify to whom he and his spouse sent such communications or with whom they met in person. (*Id.* ¶ 9.)  By September 2023, Defendant Rocah allegedly "notified

[P]laintiff and his spouse . . . that [P]laintiff's [V]ehicle was being held as evidence" in a criminal case against him that had apparently commenced. (*Id.* ¶ 10.)[4]

On January 25, 2024, Plaintiff's spouse received written correspondence from the City of Yonkers Police Department's Abandoned Vehicle Unit, and specifically from Defendant Police Officer Sherding. (*Id.* ¶ 11.) This correspondence explained that Plaintiff had 10 days from February 21, 2023 to recover the Vehicle, otherwise the Vehicle would be disposed of according to New York State Vehicle and Traffic Law § 1224. (*Id.*) County Defendants represent that the year provided was a typographical error, and the letter should have listed "February 21, 2024" as the pertinent date. (Defs.' Mem. 10 n.5.) The letter explained that the Vehicle was being held by Defendant Don Glo Towing. (SAC ¶ 11.) Plaintiff and his wife spoke to Defendant Sherding, who represented that the Vehicle had been released since October 3, 2023. (*Id.* ¶ 12.) Plaintiff's wife requested that his Property be released, but Defendant Sherding denied access to that Property. (*Id.*) Eventually, Plaintiff received $6,300.00 in response to his requests for the lost Property. (*Id.* ¶ 20.)

On February 22, 2024, Plaintiff's spouse received unspecified "communications" from the District Attorney's Office. (*Id.* ¶ 13.) Plaintiff includes no further allegations as to the nature or content of these communications. (*See generally* SAC.) It appears, however, that a letter was sent from Rocah's office, but which carries the wet signature and name of a paralegal, to Plaintiff at his home address. (Cosgriff Decl., Ex. D, at 2.) The letter advised that the District Attorney's Office "d[id] not need the Yonkers Police Department to retain [the] [V]ehicle as evidence" and instructed Plaintiff to "make an appointment to claim [the] vehicle." (*Id.*)

---

[4] Plaintiff offers no details on how it was that Defendant Rocah allegedly provided this notification.

6

Plaintiff's wife reached out to Don Glow Towing about the Vehicle and the Property it contained. (SAC ¶ 13.) She was told that, to receive the Vehicle and the Property, she needed to pay $35,000.00 or surrender the title. (*Id.*) The loss of the Vehicle, Plaintiff says, generated hardships for his family. (*Id.* ¶ 21.) His wife needed the Vehicle for household chores, including transporting their child "to and from school and other locations." (*Id.*)

B. Procedural Background

Plaintiff commenced this Action on March 7, 2024. (*See* Compl. (Dkt. No. 1).) He amended his Complaint as of right on March 29, 2024. (*See* Am. Compl. ("FAC") (Dkt. No. 5).) Chief Judge Swain dismissed the FAC with leave to replead on June 21, 2024. (Order of Dismissal dated June 21, 2024 (Dkt. No. 7).) On July 31, 2024, Plaintiff filed his SAC. (*See* SAC.) On October 24, 2024, the Action was reassigned to this Court. (*See* Dkt. (Notice of Case Reassignment dated Oct. 24, 2024).)

On November 4, 2024, this Court issued an Order directing service on Defendants. (*See* Dkt. No. 14 (order directing service).) County Defendants were served on December 31, 2024, (*see* Receipt and Return of Service (Dkt. No. 19); Receipt and Return of Service (Dkt. No. 20)), and Sherding, Sapienza, and Don Glo Towing were served on February 7, 2025, (*see* Receipt and Return of Service (Dkt. No. 21); Receipt and Return of Service (Dkt. No. 22), Receipt and Return of Service (Dkt. No. 23).)

On March 3, 2025, Sapienza and Sherding filed an Answer to Plaintiff's Second Amended Complaint, (*see* Answer (Dkt. No. 26)), and County Defendants filed a letter requesting leave to file a Motion to Dismiss, (*see* Letter from Irma Cosgriff, Esq. to Court (Mar.

3, 2025) (Dkt. No. 27)).[5] On March 10, 2025, the Court granted County Defendants' request and set a briefing schedule.  (*See* Dkt. No. 28 (order setting briefing schedule).)

On April 23, 2025, County Defendants filed their Motion to Dismiss.  (*See* Mot.; Defs.' Mem.; Aff. of Serv. (Dkt. No. 36).)

On June 12, 2025, Plaintiff requested a sixty-day extension to file his Opposition.  (*See* Aff'n of Alexis Rose in Supp. to Req. Extension of Time (Dkt. No. 37).)  In response, County Defendants requested an extension to file their Reply.  (*See* Letter from Irma Cosgriff, Esq. to Court (July 31, 2025) (Dkt. No. 38).)  The Court granted Plaintiff and County Defendants' respective extension requests on July 31, 2025.  (*See* Dkt. No. 39 (order granting extension).)

Plaintiff filed his Opposition on July 18, 2025.  (*See* Aff. in Opp'n ("Pl.'s Opp'n") (Dkt. No. 49).)[6] County Defendants filed their Reply on August 14, 2025.  (*See* County Defs.' Reply Mem. of Law ("Defs.' Reply Mem.") (Dkt. No. 40).)

On September 16, 2025, the Court received a letter from County Defendants requesting the Court deny Plaintiff's request to file a sur-reply to County Defendant's Reply.  (*See* Letter from Irma Cosgriff to Court (Sept. 15, 2025) (Dkt. No. 44).)  Although the Court had not yet received the letter motion from Plaintiff enclosed in County Defendant's letter, it notified the

---

[5] To date, Don Glo Towing has failed to appear or participate in this Action.  (*See generally* Dkt.)

[6] Although Plaintiff's Opposition is dated July 18, 2025, it did not appear on the Docket until November 19, 2025.  (*See* Dkt.)  However, County Defendants informed the Court that they received Plaintiff's Opposition on July 28, 2025, (see Letter from Irma Cosgriff, Esq. to Court (July 31, 2025) (Dkt. No. 38)), so the Court treats Plaintiff's Opposition as timely filed.

Parties that there was no need for further briefing as the Motion had been fully submitted.  (*See* Dkt. No. 46 (order so instructing Parties).)[7]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Motion to Dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*  (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer

---

[7] The Court received Plaintiff's request to file a sur-reply on October 23, 2025.  (*See* Aff. in Opp. to Defs.' Reply Mem. of Law (Dkt. No. 48).)

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [Second Amended C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)

10

(quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at \*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

1.  Eleventh Amendment

To the extent that Plaintiff's claims are brought against County Defendants in their official capacities, they argue that the claims are subject to the Eleventh Amendment immunity. (Defs.' Mem. 17–18.)  The Court agrees.

"State governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Golden v. City of New York*, No. 24-CV-5759, 2025 WL 2055697, at \*5 (S.D.N.Y. July 7, 2025) (alterations adopted, internal quotation marks omitted), *report and recommendation adopted*, 2025 WL 2062169 (S.D.N.Y. July 23, 2025); *see also Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (same).  In enacting § 1983, Congress did not waive Eleventh Amendment immunity.  *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66 (1989).  Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366. When a claim is brought against an individual defendant in her official capacity, that claim is treated as a suit against the "'entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).  Courts recognize that this immunity "may extend to District Attorneys

11

. . . and Assistant District Attorneys," so long as those officials are acting as state officials rather than city or county employees." *Golden*, 2025 WL 2055697, at \*5.  Accordingly, so long as a district attorney or an assistant district attorney "acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (dismissing § 1983 claims against prosecutors on the grounds that the Eleventh Amendment bars claims against district and assistant district attorneys acting in their official capacities).

To the extent one could interpret Plaintiff's Opposition to argue that Defendants' "actions [were] taken administratively as municipal policymakers" those claims would not be subject to the Eleventh Amendment's bar.  *D'Alessandro*, 713 F. App'x at 8; *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("With respect, however, to claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned.").

Accordingly, Plaintiff could bring a claim against County Defendants in their official capacities only as to any actions taken administratively and, even then, he would need to allege facts sufficient to support liability under *Monell*.  He has not done so.  For instance, he has not alleged that the "District Attorney . . . had promulgated a policy or custom regarding the [actions alleged]" as would be necessary for Defendant Rocah "to be [treated as] a municipal policymaker for [the] City." *Ying Jing Gan*, 996 F.2d at 536; *see also Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 292 (E.D.N.Y. 2022) (explaining that, to state a claim under a failure to train theory, the plaintiff must demonstrate that the policymaker was aware of her

subordinate's unconstitutional actions and consciously chose to ignore them).  And while Plaintiff's Opposition purports to identify materials that, if produced in discovery, might support the existence of a policy or practice, (Opp'n 3), he has not specified that County Defendants were involved in promulgating such a policy or practice, let alone what that policy or practice was, (*see generally* SAC; Opp'n).

Likewise, although Plaintiff asserts in his motion papers that "[D]efendant Rocah negligently and/or intentionally and maliciously failed to direct, train and supervise [D]efendant O'Rourke in matters of vehicle seizures and . . . due process," (Opp'n 3), such as the provision of timely notice about searches and seizures, these allegations are also insufficient.  To state a claim under a failure to train theory, the "city policymakers" must be on "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" and nevertheless choose to retain that program.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  A failure to train is actionable where, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  The Second Circuit has held that a finding of deliberate indifference requires: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights."  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (alteration in original)

13

(quoting *Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992)).  Here, Plaintiff makes only conclusory allegations in his Opposition papers that Defendant Rocah failed to properly train or supervise Defendant O'Rourke; such "conclusory assertions do not suffice to plausibly allege that a deficiency in training" existed, let alone that it "caused [Plaintiff's] injury." *Taranto v. Putnam Cnty.*, No. 21-CV-2455, 2023 WL 6318280, at *19 (S.D.N.Y. Sept. 28, 2023); *see also King v. City of Beacon Police Dep't*, No. 20-CV-5815, 2021 WL 1550073, at *3 (S.D.N.Y. Apr. 20, 2021) (dismissing *Monell* claims where the plaintiff's allegations that his injuries "resulted from a municipal policy or custom" were "wholly conclusory"); *Acosta v. City of New York*, No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim based on allegations that the defendant-city "failed to train its police officers," on the grounds that the plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused . . . [the] alleged violations of [the] plaintiff's rights").  Plaintiff's attempt to add a failure-to-train claim also falters because it does not include any allegations of other instances of inadequate training, relying exclusively on the facts of his case.  *See Werkheiser v. Cnty. of Broome,* 655 F. Supp. 3d 88, 111 (N.D.N.Y. 2023) ("[The p]laintiff only complains specifically about the prosecutorial acts relevant to her case, and not as part of a larger group of instances of such constitutional violations.  Moreover, . . . [the p]laintiff fails to allege that inadequate training of these unnamed individuals led to recurring constitutional violations.").

Accordingly, Plaintiff's SAC claims against the County Defendants in their official capacities are dismissed on Sovereign Immunity grounds.

14

### 2. Absolute Immunity

To the extent that Plaintiff's claims are brought against Defendants in their personal capacities, Defendants argue that they are entitled to absolute immunity. (*See* Defs.' Mem. 18–20.) Again, it is important to remember exactly what the claims are against County Defendants. As mentioned above, Plaintiff's SAC asserts claims under the Fourth Amendment and Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983. (SAC 1, 6–7.) Specifically, Plaintiff alleges that Defendants Rocah, Sapienza, O'Rourke, and Sherding "illegally seized [P]laintiff's [V]ehicle without a warrant and/or probable cause," (First and Second Causes of Action), (*id.* at 6), and that Defendants Rocah, Sapienza, O'Rourke, and Don Glo Towing violated Plaintiff's "Due Process Rights in accordance with the [V]ehicle and Traffic Law, Section 1224," (Third Cause of Action), (*id.* at 7). However, the specific allegations against County Defendants are quite limited. As to Rocah, she is mentioned in only paragraphs 3, 8, 10 and 13 of the SAC. (*See id.* ¶¶ 3, 8, 10, 13.) Paragraph 3 merely identifies Rocah as the District Attorney for Westchester County during the relevant time. (*Id.* ¶ 3.) Paragraph 8 alleges that Rocah ignored Plaintiff's counsel's request for the release of the Vehicle during the investigation of Plaintiff. (*Id.* ¶ 8.) Paragraph 10 alleges that Rocah notified Plaintiff and his spouse that the Vehicle was still being held in evidence as of September 2023, (*id.* ¶ 10), though it provides no specifics about how Rocah allegedly notified Plaintiff and his spouse about the retention of the Vehicle. Paragraph 13 alleges that it was not until February 22, 2024 that Plaintiff's spouse received any communications "concerning the [V]ehicle from [D]efendant

15

Rocah's office."[8] (*Id.* ¶ 13.) None of the paragraphs discussing Rocah offers any allegations that suggest she was involved in the search and seizure of the Vehicle.

As to O'Rourke, the allegations about him are found only in paragraphs 5 and 8. (*See id.* ¶¶ 5, 8.) In paragraph 5, Plaintiff identifies O'Rourke as the prosecutor in his criminal case, which as discussed above resulted in Plaintiff's conviction for, among other things, murder in the second degree. (*Id.* ¶ 5.) Paragraph 8 includes the same allegation that Plaintiff made as to Rocah—that O'Rourke ignored Plaintiff's counsel's request for return of the Vehicle during the investigation of Plaintiff. (*Id.* ¶ 8.) As with Rocah, there are no allegations that O'Rourke was involved in the search/seizure of the Vehicle. (*See generally* SAC.) With this description of the allegations against each County Defendant, the Court now turns to the absolute immunity defense.

"The Supreme Court has 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 377 (S.D.N.Y. 2021) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam) (collecting cases)). "Immunity may be asserted as a defense in a [Rule] 12(b)(6) motion where the facts supporting the defense appear on the face of the complaint." *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (internal quotation marks and citation omitted) (quoting *Buari*, 530 F. Supp. 3d at 378), *reconsideration denied sub nom. Jeanty v. Bagley*, No. 22-CV-319, 2023 WL 5175832 (N.D.N.Y. Aug. 11, 2023). "The court must draw all reasonable inferences in favor of

---

[8] As discussed above, the communication referred to was from a paralegal in the Westchester County District Attorney's Office. While the letterhead identified Rocah as the District Attorney and the signature line contained her name, it was signed by a paralegal, not the District Attorney. (*See* Cosgriff Decl., Ex. D, at 2.)

the plaintiff, including those that defeat the immunity defense." *Id.* (internal quotation marks and citation omitted).

"Absolute immunity protects a prosecutor not only from liability but also from suit." *Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (internal quotation marks and citations omitted). "Prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when functioning as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Burton v. County of Westchester*, No. 21-CV-1475, 2022 WL 2340478, at *3 (S.D.N.Y. June 29, 2022) (alteration adopted) (internal quotation marks and citations omitted); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." (alteration adopted) (internal quotation marks and citation omitted)). Because "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions," they are covered by absolute immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Hill*, 45 F.3d at 661 (noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings (internal citations omitted)). On the other hand, a prosecutor's "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Opoku v. Cnty. of Suffolk*, 123 F. Supp. 3d 404, 416 (E.D.N.Y. 2015) ("[A] prosecutor does not enjoy absolute immunity for 'those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.'" (quoting *Imbler*, 424 U.S. at 430–31).

17

The Second Circuit has held that "the retention of evidence, as a predicate to the presentation of evidence, is critical to the prosecutor's functions as an advocate, and is thus covered by prosecutorial immunity." *Parkinson v. Cozzolino*, 238 F.3d 145, 152 (2d Cir. 2001) (collecting cases). However, the cases also suggest that managing personal property that is not used as evidence and has no prosecutorial purpose may qualify as an administrative function. *See Maloney v. Cnty. of Nassau*, No. 03-CV-4178, 2010 WL 3940456, at *4 (E.D.N.Y. Sept. 30, 2010) ("Without factual allegations as to [the prosecutor's] necessity of preserving the evidence for future use, [her] retention of [the] plaintiff's property can most logically be deemed an administrative function."), *aff'd*, 500 F. App'x 30 (2d Cir. 2012); *see also Lavicky v. Burnett*, 758 F.2d 468, 476 (10th Cir. 1985) (suggesting that in managing "the post-trial disposition" of personal property that was "not used as evidence that the State did not intend to keep," a prosecutor acts as an "*administrator*, not as an advocate" (emphasis added) (citation and quotation marks omitted)); *Coleman v. Turpen*, 697 F.2d 1341, 1346 (10th Cir. 1982) ("[I]n managing the post-trial disposition of seized property not used as evidence that the State did not intend to keep—as evidenced by its acquiescence in the sale—[the defendant] was acting as an administrator, not as an advocate." (footnote omitted)). This does not mean that a prosecutor is required to return evidence after a judgment has been entered following a plea or trial. Indeed, a prosecutor may wish to retain evidence in case there was a new trial, for example, after a defense successful appeal. *See Thompson v. Walbran*, 990 F.2d 403, 404 (8th Cir. 1993) ("We . . . conclude that [the defendant] is entitled to absolute prosecutorial immunity for retaining [the plaintiff's] property because it was important evidence and, if [the plaintiff] succeeded on direct appeal . . . it would be needed at trial.").

Here, the facts as alleged in the SAC and in materials about which the Court may take judicial notice support the conclusion that the initial seizure and retention of Plaintiff's Vehicle was as a "predicate to the presentation of evidence." *Parkinson*, 238 F.3d at 152.  Plaintiff acknowledges that the District Attorney's Office was "conducting an[] investigation on [P]laintiff" that led to the search and testing of the Vehicle.  (SAC ¶ 8.)  And, while Plaintiff is silent about the outcome of that investigation, public records confirm that Plaintiff was, in fact, convicted of several charges, including murder in the second degree and sentenced to up to life imprisonment in a judgment entered in August 2023.  (*See* Cosgriff Decl., Ex. A.)  Defendant Rocah allegedly "notified [P]laintiff and his spouse" that the "[V]ehicle was being held <u>as evidence</u>" in the criminal proceeding.  (*Id.* ¶ 10 (emphasis added).)  The only allegation against O'Rourke is that he ignored Plaintiff's request for return of the Vehicle during the investigation.  (SAC ¶ 8.)  These actions undoubtedly fall within the scope of absolute immunity, as they relate to retention of evidence during a criminal investigation and prosecution.  *See Rabadi v. City of Yonkers*, No. 21-CV-1258, 2022 WL 889734, at *5 (S.D.N.Y. Mar. 25, 2022) (dismissing section 1983 claim premised on "retention of [the] plaintiff's vehicle" in so far as it "was retained to assist the Westchester DA" in prosecution (quotation marks omitted)).  The question remains whether, at some point, County Defendants' actions became administrative.  *See, e.g.*, *Maloney*, 2010 WL 3940456, at *4.

Construing Plaintiff's allegations as liberally as possible, there are three arguments that could be made to suggest the continued retention of the Vehicle was an administrative action not entitled to absolute immunity.  First, Plaintiff alleges that County Defendants (and other Defendants) are liable for the illegal search and seizure of the Vehicle.  (SAC ¶¶ 17, 19; *id.* at 6.)  While it is true that prosecutorial immunity does not shield prosecutors who participate in

19

investigative measures, including searches, *see Simon v. City of New York,* 727 F.3d 167, 172 (2d Cir. 2013) (noting that absolute immunity is not granted to prosecutors who "assist[] in a search and seizure"), Plaintiff offers no allegations that Rocah or O'Rourke had any role in the seizure and subsequent search of the Vehicle, let alone that they did so unlawfully. Instead, there are only general allegations that all Defendants "illegally searched and seized [P]laintiff's" Vehicle and "knowingly and intentionally violated [P]laintiff's 4[th] Amendment rights." (*Id.* ¶¶ 17, 19) Yet, this general allegation is in tension with the specific claim that the Vehicle was searched after being surrounded by officers from "the City of Yonkers Police Department." (*Id.* ¶ 7.) Plaintiff also alleges that Defendants "should have allowed [P]laintiff access to any and all hearings concerning the seizure of his [V]ehicle, and their failure to do so violated [P]laintiff's rights." (*Id.* ¶ 22.)[9] However, these allegations fail, both because they are conclusory and because they group all Defendants without separating the role of each Defendant in the supposedly unlawful search/seizure of the Vehicle. *See Shorter v. Nassau County,* 779 F. Supp. 3d 311, 315 (E.D.N.Y. 2025) (dismissing pro se claims against municipal officials which failed to differentiate between the actions of the defendants); *P&J Empire Auto, Inc. v. Town of Newburgh*, No. 17-CV-2234, 2018 WL 1275716, at *2 (S.D.N.Y. Mar. 8, 2018) (noting that a

---

[9] This allegation is perplexing, because Plaintiff makes no claims about what "hearings" were held "concerning the seizure of the" Vehicle. To the extent he is referring to any proceedings related to a search warrant for the Vehicle, Plaintiff has not established a right to be present during such a proceeding, which is typically done in secret. *See In re Search Warrant,* No. 16-MC-464, 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016) (noting that "search warrant application proceedings have historically been highly secret in nature"). To the extent Plaintiff is claiming he was somehow barred from any hearings in state court related to motions seeking to suppress the fruits of the search of his Vehicle, he does not explain when those hearings were held and why Plaintiff would have been excluded (presumably by the state court judge) from such a hearing. In any event, it bears noting that the state court did deny a motion to suppress the fruits of the search of the Vehicle, having found that the search warrant was amply supported by probable cause and was legally executed. (*See* Cosgriff Decl., Ex. B, at 5.)

20

court need not credit "legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (quoting in part *Iqbal*, 556 U.S. at 678)); *Ying Li v. City of New York,* 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints that rely upon group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (citations and quotation marks omitted)).  Thus, there is no claim that comes close to plausibly alleging that Rocah and O'Rourke were involved in the search/seizure of the Vehicle.

Second, Plaintiff complains that Defendant Rocah notified him and "his spouse" that Plaintiff's Vehicle "was being held as evidence in his case" and was not "release[d] as of September 2023."  (SAC ¶ 10.)  From this allegation, it could be claimed that Rocah was unlawfully retaining the Vehicle because it had no evidentiary value as of September 2023 and, if so, such an act would be administrative and not covered by absolute immunity. *See Rabadi,* 2022 WL 889734, at *5–7 (denying motion to dismiss claim against assistant district attorney who authorized impoundment of car that no longer had evidentiary value); *Maloney*, 2010 WL 3940456, at *4–5 (concluding, at summary judgment, that without support for the conclusion that the evidence needed to be preserved for future use, it would be logical to deem the retention of the plaintiff's property an administrative act); *Morris v. Jackson*, 353 F. Supp. 2d 1199, 1200–02 (M.D. Ala. 2005) (concluding that claim premised on retention of the plaintiff's property after a grand jury failed to return an indictment should not be dismissed on absolute immunity grounds), *aff'd*, 167 F. App'x 750 (11th Cir. 2006).  However, Plaintiff does not allege that the prosecution was finished by September 2023 or that the Vehicle (and its contents) no longer had

21

value to the prosecution of Plaintiff. Indeed, the judgment of conviction was not filed until August 18, 2023, (Cosgriff Decl., Ex. A, at 2), which would explain why the Vehicle would not be available until at least September 2023. Moreover, it would have been well within the discretion of Rocah and O'Rourke to retain the Vehicle through any appeal of that judgment, meaning they would be immune for keeping it well beyond September 2023. *See Parkinson,* 238 F.3d at 152 (holding that a prosecutor who retains evidence after conviction and while a direct appeal is pending "is acting in his capacity as an advocate and is thus entitled to prosecutorial immunity"). Because Plaintiff makes no allegation, in his SAC or his opposition papers, that could be construed as alleging that the prosecution was at an end, and/or that the Vehicle no longer had any evidentiary value, there is no basis to deny County Defendants absolute immunity from the alleged conduct.

Finally, there is Plaintiff's allegation that the District Attorney's Office did not communicate to his spouse until February 22, 2024 that the Vehicle was no longer needed. (SAC ¶ 13.) This allegation is paired with the claim that the Yonkers Police Department informed Plaintiff's spouse that she had 10 days from February 21, 2024 to retrieve the Vehicle from Defendant Glo Towing or it would be disposed of in accordance with New York State Vehicle and Traffic Law Section 1224. (*Id.* ¶ 11.) The inference that could be drawn from these allegations is that Rocah failed to notify Plaintiff about possible disposal of the Vehicle until February 22, 2024, just nine days before its alleged disposal. And, Plaintiff alleges, when his spouse tried to retrieve the Vehicle, she was told she had to pay $35,000 to get it released. (*Id.* ¶ 13.)

This allegation also fails for two reasons. First, this allegation says nothing about the conduct by O'Rourke or Rocah. For example, no allegation is made whatsoever about

22

O'Rourke's involvement in the retention or release of the Vehicle or its placement with Don Glo Towing.  Indeed, the allegations make clear that the storage of the Vehicle was a decision made by Yonkers police officials, not anybody from the District Attorney's Office, let alone Rocah herself.  (*See* SAC ¶¶ 11–12.)  Second, the allegation about the communication from "Rocah's office" to Plaintiff's spouse does not claim that Rocah herself communicated with Plaintiff's spouse.  The letter that is incorporated in the SAC was signed by a paralegal in the District Attorney's Office, not Rocah.  (Cosgriff Decl., Ex. D, at 2.)  While Rocah's name appears on the signature line, the absence of her signature speaks to Plaintiff's failure to plead Rocah's personal involvement in any communication to Plaintiff or his spouse about the disposition of the Vehicle. *Cf. Rivera v. Fischer,* 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter.").[10]

Thus, the Court concludes that the allegations against County Defendants involve actions that took place during the investigation and prosecution of Plaintiff and were part of their role as advocates and are therefore shielded by absolute immunity.

### 3.  Personal Involvement

Finally, County Defendants challenge the viability of Plaintiff's § 1983 claims, on the basis that, they argue, the SAC does not support the element of personal involvement. (*See*

---

[10] Because there is no allegation that Rocah or O'Rourke made any decision about the ultimate return of the Vehicle, let alone its placement with Glo Towing, this case is different from *Rabadi*, where the assistant district attorney in that case allegedly made a determination that the vehicle at issue was no longer necessary to the prosecution and himself authorized its release to a third party company for impoundment. *Rabadi*, 2022 WL 889734, at *5–6.  As a result of those allegations, the court rejected the claim of absolute immunity. *Id.*

Defs.' Mem. 20–21.)  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *see also Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) ("To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation."); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'").  In other words, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti*, 983 F.3d at 620; *see also Washington v. Morley*, No. 21-CV-7159, 2024 WL 4252596, at *4 (S.D.N.Y. Sept. 20, 2024) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under 42 U.S.C. § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation." (citation and quotation marks omitted, alterations adopted)).  Accordingly, "a plaintiff may not rely on a special test for supervisory liability" instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 616–18.

As noted above, the SAC's allegations as to County Defendants' personal involvement are sparse.  For reasons discussed above, the Court already has determined that Plaintiff fails to state a plausible claim that County Defendants had any role in the seizure and search of the Vehicle.  Thus, the Court will focus here on the allegation that County Defendants violated Plaintiff's due process rights by retaining the Vehicle until 2024.  As to that claim, Plaintiff alleges that Defendants O'Rourke and Rocah, as well as other Defendants, "ignored [P]laintiff's counsel['s] communication requesting the release of the [V]ehicle."  (SAC ¶ 8.)  Plaintiff asserts

that Defendant Rocah "notified [P]laintiff and his spouse" that the "[V]ehicle was being held as evidence" in September 2023. (*Id.* ¶ 10.)  Plaintiff claims that his spouse did not receive any communications from "Rocah's office" until February 22, 2024. (*Id.* ¶ 13.)  It appears that the February communication is the above-described letter, in which a paralegal in the District Attorney's Office instructed Plaintiff's wife that the District Attorney's Office no longer needed the Vehicle as evidence, and advised on the steps necessary to obtain the Vehicle.  (Cosgriff Decl., Ex. D, at 2.)

As to Defendant Rocah, and as discussed above, the Complaint fails to allege facts that suffice to support personal involvement.  Plaintiff's allegations against Rocah could be construed to allege that she unlawfully detained the Vehicle past when it had any evidentiary value.  However, there is no allegation that the Vehicle was held past when it had evidentiary value.  In fact, the SAC acknowledges that the first time Plaintiff sought the return of the Vehicle, the investigation was ongoing.  (SAC ¶ 8.)  The only allegations directed at Rocah are that she allegedly informed Plaintiff (and his spouse) that the Vehicle was being held as evidence and was not released as of September 2023, (*id.* ¶ 10), and that Plaintiff's spouse received a letter from "Rocah's office" indicating that the Vehicle was no longer needed, (*id.* ¶ 13).  Neither allegation establishes Rocah's personal involvement in any constitutional violations.  The former allegation again confirms that Plaintiff was informed (through means that are not specified) that the Vehicle was still being retained because it had evidentiary value in the prosecution of Plaintiff, which, as discussed above, is an exercise of prosecutorial discretion that is covered by absolute immunity.  The latter fails because it, in fact, reflects that the DA's office no longer needed the Vehicle and because the letter so informing Plaintiff was not signed by Rocah, but by

a paralegal in the DA's office.  (*See* Cosgriff Decl. Ex. D, at 2.).   Simply put, the SAC fails to allege that Rocah was personally involved in the unlawful retention of the Vehicle.

In addition to the fact that the SAC fails to plead facts establishing Rocah's or O'Rourke's personal involvement in the seizure and search of the Vehicle, Plaintiff fails to establish that the retention of the Vehicle by the District Attorney's Office violated his due process rights.[11]  To begin, that a prosecutor would deny a criminal defendant's request to return evidence to that defendant before the criminal case came to a close is hardly a constitutional foul. *See Douglas v. Albany Police Dep't,* No. 24-CV-807, 2026 WL 654374, at *7 (N.D.N.Y. Mar. 9, 2026) ("The Court is unaware of any clearly established law which states that a . . . prosecutor's office cannot hold onto physical property of another for the purpose of determining its evidentiary value in a criminal case.").  In any event, New York law provides a remedy for property owners seeking return of property seized by law enforcement officers.  For example, "Criminal Procedure Law authorizes [a] court to order the return to a defendant property seized pursuant to a search warrant upon the defendant's request where the court has granted a motion to suppress evidence pursuant to Criminal Procedural Law § 710.20(1), and if such property is not otherwise subject to lawful retention." *People v. Sash,* 753 N.Y.S.2d 295, 297 (Crim. Ct. 2002).  Plaintiff also could have filed an Article 78 proceeding to challenge the retention of the Vehicle.  *See Boyle v. Kelley,* 365 N.E.2d 866, 867 (N.Y. 1977) (holding a property owner may seek return of property seized by law enforcement in an Article 78 proceeding).  The availability

---

[11] To be clear, the Court finds Plaintiff's allegations about O'Rourke's personal involvement to be wanting.  The only specific allegation is that O'Rourke ignored Plaintiff's request to return the Vehicle during the investigation that preceded Plaintiff's conviction.  (SAC ¶ 8.)  This does not plausibly establish that O'Rourke made any decision about the return of the vehicle or that Plaintiff had a right to its return when Plaintiff sought it.

of such post-deprivation remedies provides Plaintiff the requisite process he is due. *See Maxwell v. City of New York,* No. 25-CV-4372, 2026 WL 42769, at *3 (S.D.N.Y. Jan. 7, 2026) (discussing New York law that provides adequate post-deprivation remedies to property owners); *Abdullah v. NYPD 30th Precinct,* No. 24-CV-0137, 2024 WL 325385, at *4 (S.D.N.Y. Jan. 29, 2024) ("[A] claim under Section 1983 asserting that a government official has deprived a person of a property interest is not cognizable in a federal district court if state law provides an adequate remedy for the deprivation of that interest."). Because Plaintiff has pled no facts that he pursued any such remedies (or that the remedies were somehow inadequate), his claims against Rocah and O'Rourke fail to state a claim. *See Maxwell,* 2026 WL 42769, at *4 ("Here, Plaintiff alleges no facts showing that he has pursued any of these state remedies, nor any facts showing that these remedies are inadequate. Plaintiff therefore fails to state a claim under Section 1983 that Defendants deprived him of his property without due process."); *Disla v. City of New York,* No. 22-CV-6730, 2025 WL 1503987, at *7 (E.D.N.Y. May 27, 2025) ("Plaintiff's due process claim separately fails because Plaintiff did not pursue meaningful post-deprivation state law remedies."). Therefore, the Court dismisses Fourth Amendment and Due Process claims against County Defendants.

### 4. Injunctive Relief

Defendants argue that Plaintiff cannot demonstrate that he is entitled to relief because "any claims against the County Defendnats appear to rely on past injury, including the seizure" of the Vehicle. (Defs.' Mem. 15.) Because Plaintiff's Vehicle appears to be in the possession of Don Glo Towing, the Court agrees: the request for injunctive relief is dismissed as to County Defendants, as it is not alleged that they have any continued involvement in the deprivation of Plaintiff's Vehicle. *See Rabadi,* 2022 WL 889734, at *4 (dismissing declaratory judgment

27

claim, evaluated under the same standard, in very similar circumstances); *Hernandez v. Dormer*, No. 09-CV-5549, 2011 WL 817414, at *10 (E.D.N.Y. Feb. 25, 2011) (dismissing claim for injunctive relief where the plaintiff failed to "allege an ongoing violation of federal law by the . . . defendants").

### III.  Conclusion

For the reasons set forth above, the Motion to Dismiss is granted.

As this is the first adjudication of Plaintiff's claims on the merits and particularly in light of Plaintiff's status as a pro se litigant, Plaintiff may file a Third Amended Complaint within 30 days of the issuance of this Opinion, which Complaint may address the deficiencies that the Court has identified.  *See, e.g.*, *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 175 (S.D.N.Y. 2014) (permitting similar opportunity to amend).  The Third Amended Complaint will replace, not supplement, the prior complaints.  Thus, Plaintiff should include every allegation and every Defendant he wishes to include.  Should Plaintiff fail to file a Third Amended Complaint, his claims against County Defendants will be dismissed with prejudice for failure to state a claim upon which relief can be granted.  The Clerk of the Court is respectfully directed mail this Opinion and Order to Plaintiff and to terminate the pending Motion at Dkt. No. 32.

SO ORDERED.

Dated:  March 30, 2026
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

28